**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240720-U

Order filed July 20, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0720 Circuit No. 90-CF-2705 |
| RAY C. SPIVEY, | ) ) ) | Honorable Joseph T. Bugos, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The trial court did not abuse its discretion in denying defendant's motion for a
        DNA database search. Affirmed.

¶ 2     Defendant, Ray C. Spivey, appeals from the trial court's order denying his "Motion For
DNA Database Search" pursuant to section 116-5 of the Code of Criminal Procedure of 1963
(Code) (725 ILCS 5/116-5 (West 2024)). For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    This case has an extensive procedural background. We recount only that information necessary to the parties' arguments on appeal.

¶ 5                                    A. Trial

¶ 6    On August 27, 1994, following a jury trial, defendant was convicted of home invasion and attempted aggravated criminal sexual assault. He was subsequently sentenced to consecutive prison terms of 45 and 15 years, respectively. At trial, complainant testified in relevant part that, in the early morning hours of September 23, 1990, she awoke in her garden-level, one-bedroom apartment to an intruder lying next to her on the floor in the living room. The intruder directed complainant to the bedroom and ordered her at knife point to remove her clothing. Complainant reached for the knife, at which point a scuffle ensued. During the scuffle, complainant screamed, and the intruder placed his hand inside her mouth to muffle the noise. Complainant bit the intruder's fingers, causing him to scream, and the intruder stabbed complainant. Complainant testified that the intruder's hand was covered by a cloth but that "[he] didn't wear any glove." At that point—approximately five minutes after she awoke—the intruder turned on a light in the kitchen and exited through the apartment door by unlocking the doorknob and chain.

¶ 7    Complainant described the intruder as a male, not tall and not fat, and with "the hair color black and the face is color[] black." Complainant also reported that she had located a piece of rope, which was wrapped in a paper towel, underneath a chair in the living room. The items did not belong to her, and complainant surmised that the intruder had placed the items there when he was on the floor next to her. Complainant testified that she had left the bedroom window open. The bedroom window screen had been removed, and the window blinds were in disarray. Police officers found a blood-stained sock outside complainant's window.

¶ 8 Following an anonymous tip approximately a week after the crime, defendant was questioned by the police and an assistant state's attorney and admitted that he broke into complainant's apartment and attacked her, as memorialized in the assistant state's attorney notes, which defendant signed after making changes. Experts for the prosecution testified that a wound observed on defendant's hand was a human bite wound that was highly consistent with complainant's teeth. Defendant, however, testified that he never admitted to committing the offenses and that he never conveyed certain information attributed to him in the statement. Defendant also testified that the wound on his finger was from accidentally slamming a car door on his finger.

¶ 9 We affirmed defendant's convictions and sentences on direct appeal (see *People v. Spivey*, No. 2-94-1225 (1997) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 10 B. Postconviction Proceedings

¶ 11 We affirmed the dismissal of defendant's first postconviction petition (see *People v. Spivey*, No. 2-03-0785 (2004) (unpublished order under Illinois Supreme Court Rule 23)). We subsequently affirmed the dismissal of his second postconviction petition, which defendant had filed without leave of court (see *People v. Spivey*, 377 Ill. App. 3d 146 (2007)). On February 19, 2016, defendant, as a self-represented litigant, filed a motion for leave to file a successive postconviction petition, alleging ineffective assistance of counsel arising out of various alleged errors at trial and "cause and prejudice." The trial court granted the motion but then summarily dismissed the successive postconviction petition as frivolous and patently without merit. Defendant appealed, arguing that, once leave is granted to file a successive postconviction petition, the petition must be docketed for second-stage proceedings. After the State filed a confession of error, this court entered an order, reversing the trial court's first-stage dismissal of

3

defendant's successive postconviction petition and remanding the case for second-stage proceedings. *People v. Spivey*, No. 2-16-0654 (Aug. 28, 2018). Counsel was appointed to represent defendant in the proceedings.

¶ 12                              C. Motions for Forensic Testing

¶ 13          Subsequently, defendant filed several motions for forensic testing, as outlined below.

¶ 14                              1. Sections 116-3 and 116-4 Motions

¶ 15          On June 16, 2022, defendant, through counsel, filed "Petitioner's Motion For Forensic Testing Not Available At Trial Regarding Actual Innocence-DNA" (motion for DNA testing) pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2022)), seeking DNA testing of the rope, paper towel, and blood-stained sock recovered at the crime scene. Defendant argued that, given the scientific advancements in DNA testing and the ability to now detect a DNA profile from a smaller sample size, the DNA testing has the scientific potential to provide new, noncumulative evidence relevant to defendant's assertion of actual innocence and which would raise a reasonable probability that defendant would have been acquitted if the test results had been available prior to trial even though the results may not completely exonerate defendant. Accordingly, defendant sought an order that the rope, paper towel, and sock be submitted to the Du Page County Crime Laboratory for testing to identify any DNA profiles, that any DNA profiles identified be compared with complainant's and defendant's DNA and that, if the DNA profile was not consistent with complainant's or defendant's DNA, "that the profile be compared with known profiles in law enforcement databases."

¶ 16          In addition to the motion for DNA testing, on June 16, 2022, defense counsel filed a "Motion For Discovery And Motion For Forensic Testing Not Available At Trial Regarding Actual Innocence—Fingerprints" (motion for fingerprint testing) pursuant to section 116-4 of the

4

Code (725 ILCS 5/116-4 (West 2022)) and the Postconviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)), seeking forensic testing of latent fingerprints collected from the crime scene and arguing that the trial court has the inherent discretionary authority to order discovery in postconviction proceedings.

¶ 17 On November 17, 2022, the trial court denied the section 116-3 motion for DNA testing of the rope and paper towel and the section 116-4 motion for fingerprint testing for failure to establish a sufficient chain of custody. However, the trial court granted the section 116-3 motion for DNA testing "as it pertain[ed] to the sock." In addition to finding that defendant had established a sufficient chain of custody for the sock and that identity was at issue at trial, the trial court found that "there is a very rare and remote (and probably most unlikely) possibility that the testing will produce evidence materially relevant to the defendant's claim of actual innocence." The trial court reasoned, "Arguably, the sock was never connected to the crime, and it was never argued at trial that it was connected. Moreover, there were shoe impressions outside the window, suggesting that the assailant wore shoes and did not lose a sock while climbing through the window. The sock was found on the ground outside the window in the public area of an apartment complex." Thus, while stating that DNA test results would not necessarily produce evidence materially relevant to defendant's actual-innocence claim, the trial court noted that likelihood of success was not a consideration and that the purpose of discovery rules is to protect defendant from unfairness, surprise, and inadequate preparation and afford defendant an opportunity to investigate the circumstances from which the evidence arose. The trial court further noted that, if postjudgment forensic testing is otherwise warranted, it should be authorized given its potential to produce relevant evidence, regardless of how slight the chance of yielding a favorable result. Accordingly, the trial court granted the motion for forensic testing

5

for DNA on the sock. Subsequently, on January 31, 2023, the trial court entered an order directing the Du Page County Forensic Science Center to perform testing for the presence of DNA on the sock and to compare DNA found with complainant's DNA and defendant's DNA.

¶ 18                              2. Section 116-5 Motion

¶ 19        On March 7, 2024, defendant, through counsel, filed "Petitioner's Motion For DNA Database Search" (motion for a DNA database search) pursuant to section 116-5 of the Code (725 ILCS 5/116-5 (West 2024)). Noting the trial court's November 17, 2022, order granting defendant's motion for DNA testing as to the sock, defendant reported, "Per the DNA testing completed by the DuPage County Crime Laboratory, a cutting was examined from the white sock where blood was previously indicated. DNA from one male donor was observed at this location. [Defendant] and the victim are both excluded contributors to the DNA (Exhibit 2A1)." Further, quoting section 116-5 at length and noting that "[t]he DuPage County Crime Laboratory has indicated that the DNA profile is suitable, *i.e.*[,] good enough data, for upload to SDIS/NDIS [State DNA Index System and National DNA Index System]," defendant sought an order pursuant to section 116-5, "directing that the genetic profile recovered from Exhibit 2A1[] be compared against i) the genetic profiles of offenders maintained under subsection (f) of Section 5-4-3 of the United Code off Corrections [730 ILCS 5/5-4-3], ii) genetic profiles, including but not limited to profiles from unsolved crimes maintained in State or local DNA databases by law enforcement agencies, and iii) that the Illinois State Police request the National DNA index system to search its databases of genetic profiles."

¶ 20        In its response in opposition to defendant's motion for a DNA database search, the State noted that the DNA testing report reflected that two portions of the sock were tested—Exhibit 2A1 (testing results excluded defendant and complainant as the DNA donor) and Exhibit 1A1

6

(testing results did not allow for a determination of whether anyone could be included as a donor). The State argued that section 116-5 does not provide a basis for defendant's request for a DNA database search because its plain language reflects its applicability to *pretrial* proceedings, and not, like here, postconviction proceedings. See 725 ILCS 5/116-5 (West 2024) ("Upon motion by a defendant charged with any offense where DNA evidence may be material to the defense investigation or relevant at trial, a court may order a DNA database search by the Illinois State Police. ***"). Moreover, the State argued that defendant failed to establish that the DNA profile meets the requirements for entry into CODIS/NDIS database systems. Citing the supporting affidavit of Tamara Camp, a forensic scientist and the CODIS Administrator at the Du Page County Forensic Science Center, the State argued that, while the DNA profile from the sock contained sufficient information to render it *suitable* for entry into CODIS/NDIS database systems, the DNA profile was not *eligible* for entry. Camp attested that a DNA profile is eligible for entry into CODIS/NDIS database systems when the profile is found at the crime scene and associated with the crime, the profile can be attributable to the putative perpetrator but not collected directly from the perpetrator's possession, and any elimination standards from other people involved in the crime have been requested and/or tested. The State argued that there was no evidence that the sock from which the DNA profile was recovered was attributable to the putative perpetrator, citing the trial court's reasoning when granting defendant's section 116-3 motion for DNA testing that the sock was never connected to the crime.

¶ 21    On November 25, 2024, following argument, the trial court (a judge different from the judge who entered the November 17, 2022, order on the sections 116-3 and 116-4 motions) denied defendant's section 116-5 motion for a DNA database search. The trial court agreed with the State that the plain language of section 116-5 reflects its applicability to pretrial proceedings,

7

and not to postjudgment proceedings, noting the distinction in the language of sections 116-3 and 116-5. In addition, the trial court reasoned that, even if section 116-5 applied, the DNA profile from the sock "must be associated with the crime and be attributable to the putative perpetrator based on NDIS and the DuPage County Forensic Sciences Center requirements per the CODIS administrator of DuPage County, Tamara Camp, otherwise the DNA profile does not meet federal requirements under 116-5, and is ineligible for the DNA database search ***." The trial court reiterated that the sock was never connected to the crime nor was there any argument at trial as to a connection. Moreover, the trial court reasoned:

"[T]here were shoe impressions outside the window, suggesting the assailant wore shoes and did not lose a sock while climbing through the window. The sock was found on the ground outside the window in the public area of an apartment complex. If the sock were tested, the DNA results would not necessarily produce evidence that is materially relevant to [defendant's] actual innocence claim, as it has not been demonstrated that the sock was connected to the offense.

There is no information that the sock, from where the DNA profile was recovered, was attributable to the putative perpetrator, and therefore, the DNA profile recovered from the sock was not eligible for entry into the CODIS/NDIS database system."

¶ 22    Accordingly, the trial court denied defendant's section 116-5 motion for a DNA database search.

¶ 23    Defendant timely appealed.

¶ 24                                II. ANALYSIS

¶ 25    On appeal, defendant first argues that the trial court abused its discretion in denying his motion for a DNA database search and requests that we remand the matter to allow the State to

8

search law enforcement databases for a DNA profile that matches the DNA recovered on the sock. Defendant further challenges the constitutionality of section 116-5(b) of the Code (725 ILCS 5/116-5(b) (West 2024)), both facially and as applied, on grounds that it is unconstitutionally vague and violates the separation of powers clause (Ill. Const. 1970, art. II, § 1). The State responds that the trial court properly denied the motion on the basis that section 116-5 is inapplicable and, alternatively, on the basis that any result would not be materially relevant to defendant's claim of actual innocence. The State further argues that section 116-5(b) is neither unconstitutionally vague nor a violation of the separation of powers clause. To place the parties' arguments in context, we review the statutory provisions at issue—sections 116-3 and 116-5.

¶ 26    Section 116-3 of the Code, entitled "Motion for fingerprint, Integrated Ballistic Identification System, or forensic testing not available at trial or guilty plea regarding actual innocence," provides in relevant part:

"(a) *A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case* for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial or guilty plea which resulted in his or her conviction, and:

(1) was not subject to the testing which is now requested at the time of trial; or

9

(2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time of trial that provides a reasonable likelihood of more probative results.

* * *." (Emphasis added.) 725 ILCS 5/116-3(a)(1), (2) (West 2022).

¶ 27    Section 116-3 "allows a defendant, after he has already been convicted, to move the trial court for postconviction DNA testing." *People v. Wright*, 2012 IL App (1st) 073106, ¶ 64. The statute "explains the process defendants must follow to obtain fingerprint or forensic testing not available at trial regarding actual innocence." *People v. Shum*, 207 Ill. 2d 47, 63 (2003).

¶ 28    In contrast, section 116-5 of the Code, entitled "Motion for DNA database search (genetic marker groupings comparison analysis)," provides in relevant part:

"(a) *Upon motion by a defendant charged with any offense* where DNA evidence may be material to the defense investigation or relevant at trial, a court may order a DNA database search by the Illinois State Police. Such analysis may include comparing:

(1) the genetic profile from forensic evidence that was secured in relation to the trial against the genetic profile of the defendant,

(2) the genetic profile of items of forensic evidence secured in relation to trial to the genetic profile of other forensic evidence secured in relation to trial, or

(3) the genetic profiles referred to in subdivisions (1) and (2) against:

(i) genetic profiles of offenders maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, or

(ii) genetic profiles, including but not limited to, profiles from unsolved crimes maintained in state or local DNA databases by law enforcement agencies.

10

(b) If appropriate federal criteria are met, the court may order the Illinois State Police to request the National DNA index system to search its database of genetic profiles.

***." (Emphasis added.) 725 ILCS 5/116-5 (West 2020).

¶ 29      Accordingly, the plain language of section 116-5, limiting the availability of the statute to defendants "charged with any offense where DNA evidence may be material to the defense investigation or relevant at trial," reflects that it is applicable only to *pretrial* defendants seeking DNA database searches. See *Wright*, 2012 IL App (1st) 073106, ¶ 89 (explaining that section 116-3 "permits postconviction DNA testing," whereas section 116-5 "permits pretrial DNA testing"); see also *People v. Horton*, 2022 IL App (4th) 210672-U, ¶ 27 ("Section 116-5 of the Criminal Procedure Code governs pretrial DNA searches."). Thus, the trial court properly determined that section 116-5 is not available to defendant as a procedural mechanism in these postconviction proceedings.

¶ 30      Defendant maintains that section 116-5 is in fact applicable to postjudgment defendants as evidenced by its inclusion in article 116 of the Code, which is entitled "Post-Trial Motions." We disagree. In addition to including provisions governing certain posttrial motions, article 116 includes sections 116-3, 116-4, and 116-5—all of which pertain to forensic evidence and forensic testing. Thus, inclusion of section 116-5 in article 116 merely reflects a legislative intent to place such provisions together in one article, rather than an intent to apply section 116-5 to postjudgment defendants. Indeed, as set forth above, the plain language of section 116-5—the best evidence of legislative intent (see *Nelson v. Kendall County*, 2014 IL 116303, ¶ 23)— contradicts any such intent, as postjudgment defendants are no longer "charged with an offense." Defendant also cites *Reed v. Jones*, No. 11 C 6387, 2025 WL 416828, at *15 (N.D. Ill. Feb. 6,

11

2025) (unpublished), to support the applicability of section 116-5. *Reed* is neither binding nor dispositive. Defendant quotes the court's reference to a "postconviction motion for a DNA database search" pursuant to section 116-5 in determining that a challenge to the denial of the motion was not procedurally defaulted. *Id.* However, a review of the decision reflects that the court was simply recounting the procedural history of the claim, not deciding whether section 116-5 applies to postjudgment defendants. *Id.*

¶ 31        Thus, the trial court properly denied defendant's section 116-5 motion on the basis that section 116-5 is not applicable to defendant in these postconviction proceedings. In light of our holding, we need not address defendant's challenge to the trial court's additional finding that the requested DNA database search would not materially advance defendant's claim of actual innocence or his challenge to the constitutionality of section 116-5(b).

¶ 32        Alternatively, however, defendant maintains that his motion for a DNA database search, while brought pursuant to section 116-5, should be construed as either a section 116-3 motion or a motion to enforce the trial court's November 17, 2022, order granting defendant's section 116-3 motion for DNA testing as to the sock. Defendant notes that his motion for a DNA database search sought an order directing that the genetic profile recovered from the sock be compared with genetic profiles of offenders maintained in state and federal databases—relief that defendant argues section 116-3(a) allows. See *J.D. Marshall International, Inc. v. First National Bank of Chicago*, 272 Ill. App. 3d 883, 888 (1995) ("The nature of a motion is determined by its substance rather than its caption.").

¶ 33        Contrary to defendant's argument, his motion for a DNA database was in substance a motion for relief under section 116-5. A review of the motion reflects that he explicitly and repeatedly sought relief under section 116-5 throughout the motion and further quoted at length

from section 116-5. Accordingly, we reject defendant's characterization of the motion as one essentially seeking relief under section 116-3. Moreover, to the extent defendant asserts lack of compliance with the trial court's November 17, 2022, order granting defendant's section 116-3 motion for DNA testing as to the sock, this issue is outside the scope of this appeal. Defendant did not file a notice of appeal from the November 17, 2022, order. Rather, defendant initiated a new proceeding with the filing of his section 116-5 motion for a DNA database search. On November 25, 2024, the trial court entered an order denying his section 116-5 motion for a DNA database search, and defendant filed a notice of appeal from that order only—the subject of this appeal. Accordingly, we lack jurisdiction to review the November 17, 2022, order. See *People v. Davidson*, 2024 IL App (1st) 240762, ¶ 35 ("A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal.").

¶ 34    As a final matter, we note defendant's assertion that he received unreasonable assistance of postconviction counsel by virtue of counsel's filing of the section 116-5 motion for a DNA database search. See *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 24 (counsel must provide reasonable assistance of counsel during all stages of postconviction proceedings). Defendant contends that, in its November 17, 2022, order, the trial court "unconditionally" granted defendant's section 116-3 motion for DNA testing as to the sock. Thus, according to defendant, after defendant and complainant were excluded as possible donors of the DNA found on the sock, and after almost a year had passed, counsel should have filed a petition for rule to show cause to compel the State to compare the DNA profile with known profiles in law enforcement databases in compliance with the trial court's November 17, 2022, order.

¶ 35    However, the instant appeal is not an appeal from a ruling on a postconviction petition. See *People v. Permanian*, 381 Ill. App. 3d 869, 872 (2008) ("A section 116-3 order initiates a

13

separate proceeding independent of any claim for post-conviction or other relief."). Indeed, the trial court has not yet ruled on defendant's postconviction petition (and appointed counsel has not filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017)). Thus, any claim of unreasonable assistance of postconviction counsel with respect to counsel's performance in this regard is premature and ultimately beyond the scope of our jurisdiction in this appeal. We further observe that, as the State points out, "To the extent that Defendant believes the court granted this type of DNA database search when granting the section 116-3 testing, then Defendant is not without recourse. He can file a motion with the circuit court to address this matter." In sum, the trial court did not abuse its discretion in denying defendant's section 116-5 motion for a DNA database search.

¶ 36                                III. CONCLUSION

¶ 37        For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 38        Affirmed.